IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MATRIX SYSTEM AUTOMOTIVE
FINISHES, INC., a Michigan corporation,

        Plaintiff,

v.                                                                                            CIV 06-0311 MCA/KBM

DISCOUNT BODY SHOP PRODUCTS, INC.,
a New Mexico Corporation, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER ON DISCOVERY MOTIONS

    This matter is before the Court upon several pending interrelated discovery motions. Having reviewed the motions, the memoranda submitted by the parties and the relevant authorities, I will now set forth my rulings and rationale.

**Background**

    Plaintiff Matrix contends that "Defendants worked together to engage in a scheme of counterfeiting using Matrix trademarks" in violation of the Latham Act, 15 U.S.C. § 1051, et seq. *See Doc. 50* at 11.  Defendants respond that this case involves Defendant Discount's one-time use of a Matrix label on a can of sealer produced by Matrix' direct competitor – Defendant CCS. Defendants maintain that the label was attached along with the CCS label to comply with federal warning requirements.  Defendants' counterclaims allege that Matrix' claims are frivolous and pursued in retaliation for Defendants' filing breach of contract claims in lawsuits now pending in Texas and New Mexico state courts.

***Motion for Protective Order filed by Defendants Discount & Farrill (Doc. 43) and
Related Plaintiff's Motion to Compel Discount Defendants' Responses (Doc. 49)***

The first set of discovery requests propounded by Matrix asked for Defendants' financial data including annual dollar sales, gross profits and net profits. Approximately ten days before responses to those discovery requests were due, Plaintiff Matrix accepted a Rule 68 Offer of Judgment of $2,500 plus costs from Defendants Discount and Farrill ("Discount Defendants") on all counts of the Complaint: Count I (false designation of origin under 43A of the Latham Act), Count II (unfair competition by palming or passing off), and Count III (trademark infringement). *See Doc. 35*. Evidently later realizing that their counterclaim was still in play, the Discount Defendants served objections and responses to the first set of discovery requests, but two weeks after the due date.

Defendants concede that their objections and responses to Plaintiff's discovery requests were untimely. Defendants nevertheless maintain that only discovery requests related to the remaining counterclaim are calculated to lead to relevant evidence because Plaintiff's claims are no longer at issue in this lawsuit. Thus, they objected to production of the financial information and argue that they "should not be required to expend time and money responding to onerous, moot and irrelevant discovery requests." *Doc. 43* at 4.

Matrix counters that by failing to file timely responses to the first set of requests, the Discount Defendants have automatically waived any objections and must now give complete responses to the requested discovery even if the sought information relates to a now moot issue. *See* FED. R. CIV. P. 33 ("Any ground not stated in a timely objection [to interrogatories] is waived unless the party's failure to object is excused by the court for good cause shown."); FED. R. CIV. P. 34, Advisory Committee Notes (indicating the procedure of Rule 34 regarding requests

for production "is essentially the same as that in Rule 33."). In fact, Rule 34(b)(4) was "added to make clear that . . . untimely grounds for objection ordinarily are waived."). FED. R. CIV. P. , Advisory Committee Notes to the 1993 Amendments.

The Federal Rules of Civil Procedure dictate that I construe and administer them "to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1. In this particular case, application of the automatic waiver provision arguably would defeat these purposes because certain discovery requests relate solely to Plaintiff's claims which are no longer at issue. Yet, I must look to the larger picture for the need to enforce the rules as written. In any lawsuit a party may promulgate discovery requests that are onerous, overly burdensome and irrelevant. Yet the failure to interpose those objections in a timely manner does not relieve the responding party from providing complete responses to those requests for information. To simply disregard the dictates of Rule 34 on a case-by-case basis would undermine the very essence of the automatic waiver provision.

Nevertheless, I find that the confusion created by the acceptance of the offer of judgment constitutes good cause under Rule 33 for failure to file a timely response. The Discount Defendants explain that the delay occurred "because they believed that Plaintiff's acceptance of the offer of judgment relieved their obligation to respond to discovery related to Plaintiff's complaint." *Doc. 43* at 2. When they later refused to dismiss their counterclaim, Defendants evidently realized that Plaintiff's discovery requests directed at those claims would still be fair game and promptly responded with their objections.

Having found good cause for the delay, I will exercise my discretion and grant the Discount Defendants' motion for protective order and permit them to withhold the requested financial information which is related solely to the damages previously sought by Plaintiff.

However, Defendants will be required to review their responses and supplement them to produce information solely related to the still-pending counterclaim.[1]

***Matrix's Motion to Compel Pal-Z's Responses to First Set of Discovery Requests (Doc. 45)***

Defendant Pal-Z did file timely objections to Matrix's discovery requests. However, Matrix contends that the objections are baseless and the responses inadequate such that Pal-Z is acting in bad faith during the discovery phase of this litigation. Because I find that at least some of the objections are well taken, I will deny Plaintiff's motion for attorney fees in bringing this motion to compel.

Pal-Z does business as Car Color and Supply ("CCS") and sells products in the automotive paint market that compete with Plaintiff. Defendant Discount used to distribute the Matrix line, but now distributes the Pal-Z products among others. Plaintiff contends that Pal-Z and Discount "worked together to sell CCS products under Matrix brands." *Doc. 46* at 2.

Matrix contends that the financial data it has requested from Pal-Z is relevant and reasonably calculated to lead to the discovery of admissible evidence on the issues of punitive damages and a disgorgement of profits remedy. Until such time as Plaintiff demonstrates a *prima facie* showing of willful conduct, however, I believe that the sensitive nature of a competitor's financial picture outweighs Defendants claim to such information. *See Mid Continent Cabinetry v. Koch Sons*, 130 F.R.D. 149, 152 (D. Kan. 1990) (when plaintiff and defendant are business competitors, "a delay in discovery until a *prima facie* showing of entitlement to punitive damages is shown might be justified.").

Quoting from the *Banjo Buddies, Inc.* case, Plaintiff protests that "the Tenth Circuit held that on the basis of the 'plain language of [§ 43(a)], willful infringement was not a prerequisite to

---

[1] Matrix has withdrawn the contested notices of deposition, so that related issue is now moot.

an accounting of the infringer's profits.'" *Doc. 56* at 4 (emphasis added). Plaintiff's reliance is misplaced – the *Banjo Buddies, Inc.* decision comes not from the Tenth Circuit but the Third Circuit. *See Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168 (3rd Cir. 2005). In fact, Tenth Circuit precedent holds otherwise:

> **[W]e require a showing that Defendant's actions were willful to support an award of profits under 15 U.S.C. § 1117(a)** . . . This standard is not universally applied among the circuit courts. While most courts basically agree that an award of profits in the absence of actual damages requires some kind of "intent" on the defendant's part, the precise articulation of the required state of mind varies from deliberate and knowing to willful and fraudulent.

*Western Diversified Services, Inc. v. Hyundai Motor America, Inc.*, 427 F.3d 1269, 1274 n.1 (10th Cir. 2005) (emphasis added) (citation omitted). And, as to the issue of disgorgement of profits, the Court has wide discretion in granting this equitable remedy. Arguably, because only the profits generated from the infringing conduct would be subject to disgorgement, discovery should be limited only to such profits.

Plaintiff also seeks virtually unlimited information as to Defendants' business including not only all profits, but customer and sales data. Such information could give a direct competitor such as Plaintiff a significant business advantage, and I am not convinced at this juncture that Plaintiff's proposed protective order would provide the necessary security to Defendants. This litigation has been contentious from the beginning, and all parties have been quick to cry foul and make allegations of bad faith. Therefore, until such time as a *prima facie* showing of a willful violation has been produced, requests for such financial information will be denied.

### *Defendant Pal-Z and Ronnie Wall's Motion to Compel Discovery (Doc. 55)*

Matrix timely objected to providing its own financial information in response to interrogatories propounded by Defendant Pal-Z and Ronnie Walls ("Pal-Z Defendants"). They

contend that the financial information "pertains to a valid defense that, given the scale of Plaintiff's venture, a label on one can of sealer simply cannot, as a practical or legal matter, support a trademark infringement action because one can of sealant cannot cause any actual confusion in the marketplace." *Doc. 55* at 3.

Matrix concedes that it is a nationwide operation larger than that of the defendants, and seems to now itself be concerned with providing such sensitive business information to a direct competitor. Indeed, the proffered purpose for acquiring this information is of far limited value in this litigation when compared to the competitive advantage such business data would provide to a competitor. Surely Defendants can make the same point with other publically available information regarding the size of Matrix's operation.

Indeed, Defendants' request in Interrogatory 14 that Matrix identify **_all_** lawsuits to which it has been a party in the last ten years regardless of the subject matter of the action. Defendants speculate that "[p]rior suits beyond those grounded in trademark law could yield admissible evidence for, in light of modern litigation practice, there may well be substantial information about the nature and scope of Plaintiff's business already in the public domain from prior legal actions." I agree, but find that the request should be tailored to a more narrow, relevant time span – the last three years.

Defendants also seek the names of all chemists and telemarketers who have been employed by or contracted with Matrix in the past. Simply put, I agree with Matrix when it doubts that such an overbroad request is truly calculated by Defendants to lead to admissible evidence relevant to the issues of "both liability (evidence of any consumer confusion) and damages (evidence of reduced sales). . . ." *Doc.55* at 3. So-called fishing expeditions are unwarranted when compliance would be not only onerous but unduly burdensome.

*Observations*

Generally when a case is referred to me for discovery and settlement purposes, I conduct an initial Rule 16 scheduling conference, set deadlines and hold a settlement conference. That is usually all the court intervention that is required during the discovery phase. Here, however, discovery has stalled, and all parties complain of a lack of good faith and ongoing litigation animus of opposing parties and counsel.

It is apparent from all four of the above motions and the exhibits attached thereto that everyone should be reminded that "[l]awyers appearing in this District must comply with the section for lawyers of "A Creed of Professionalism of the New Mexico Bench and Bar." *See* D.N.M.LR-Civ. 83.9. Following this opinion, I will set forth portions of the Creed and highlight especially pertinent professional obligations for not only the attorneys to review but to share with their clients. The attorneys are then to certify to the Court that they have reread the above motions, memoranda and all submitted exhibits with those thoughts of the Creed in mind.

Wherefore,

**IT IS HEREBY ORDERED AS FOLLOWS:**

(1) The Motion for Protective Order filed by Defendants Discount & Farrill *(Doc. 43)* is **granted** ;

(2) Plaintiff's related Motion to Compel Discount Defendants' Responses *(Doc. 49)* is **denied**;

(3) Matrix's Motion to Compel Pal-Z's Responses to First Set of Discovery Requests *(Doc. 45)* is granted insofar as the request relates to communications regarding Matrix products either among the Defendants or between Roger Barnes and any defendant (Requests for Production 42 & 44). In all other respects, the motion is **denied**;

(4)  Defendant Pal-Z and Ronnie Wall's Motion to Compel Discovery *(Doc. 55)* is **granted in part**.  Matrix shall respond to Interrogatory 14 and identify all lawsuits to which it has been a party in the last three years regardless of the subject matter of the action.  In all other respects, the motion is **denied**; and

(5)  By the first of the year, all counsel shall file certifications that they have complied with my directives set forth in the paragraph titled "Observations."

_____
UNITED STATES MAGISTRATE JUDGE

## Lawyer's Preamble

*As a lawyer, I will strive to make our system of justice work fairly and efficiently.* In order to carry out that responsibility, I will comply with the letter and spirit of the disciplinary standards applicable to all lawyers, and I will also conduct myself in accordance with the following Creed of Professionalism when dealing with my client, opposing parties, their counsel, the courts, and any other person involved in the legal system, including the general public.

A. In all matters: "My Word is My Bond."
B. With respect to my clients:
- I will be loyal and committed to my client's cause, and I will provide my client with objective and independent advice;
- I will work to achieve lawful objectives in all other matters, as expeditiously and economically as possible;
- In appropriate cases, I will counsel my client regarding options for mediation, arbitration and other alternative methods of resolving disputes;
- *I will advise my client against pursuing matters that have no merit;*
- *I will advise my client against tactics that will delay resolution or which harass or drain the financial resources of the opposing party;*
- *I will advise my client that civility and courtesy are not weaknesses;*
- *I will counsel my client that initiating or engaging in settlement discussions is consistent with zealous and effective representation;*
- I will keep my client informed about the progress of the work for which I have been engaged or retained, including the costs and fees;
- I will charge only a reasonable attorney's fee for services rendered;
- I will be courteous to and considerate of my client at all times.

C. With respect to opposing parties and their counsel:
- *I will be courteous and civil, both in oral and in written communications;*
- I will not make improper statements of fact or of law;
- *I will agree to reasonable requests for extensions of time or waivers of formalities when legitimate interests of my client will not be adversely affected;*
- *I will consult with opposing counsel before scheduling depositions and meetings or before rescheduling hearings;*
- *I will cooperate with opposing counsel's requests for scheduling changes;*
- *I will not use litigation, delay tactics, or other courses of conduct to harass the opposing party or their counsel;*
- *I will refrain from excessive and abusive discovery, and I will comply with reasonable discovery requests;*
- *In depositions, negotiations and other proceedings, I will conduct myself with dignity, avoiding groundless objections and other actions that are disrupting and disrespectful;*
- I will not serve motions and pleadings that will unfairly limit the other party's opportunity to respond;
- In the preparation of documents and in negotiations, I will concentrate on substance and content;
- I will clearly identify, for other counsel or parties, all changes that I have made in all documents.